**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 20-62246-CIV-SINGHAL

THE NORTH FACE APPAREL CORP., *et al.*,

        Plaintiffs,

vs.

AUTNFOUTLETSTORE.COM, *et al.*,

        Defendants.

_____/

**PLAINTIFFS' MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST
DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiffs, The North Face Apparel Corp., TBL Licensing LLC, Vans, Inc., Jansport Apparel Corp., Kipling Apparel Corp., and Altra LLC (collectively "Plaintiffs"), by and through their undersigned counsel, hereby move this Honorable Court for entry of final default judgment against Defendants, the Individuals, Partnerships, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"),[1] and in support thereof, submit the following Memorandum of Law.

**I.**     **INTRODUCTION**

Plaintiffs initiated this action against Defendants through the filing of their Complaint for

---

[1] Defendant 5 - hararestar.com, Defendant 22 - cheaptimberlboot.co.uk, Defendant 29 - timberlandbotfiyat.com, Defendant 40 - vanscanada.ca, and Defendant 52 - zapatosdelona.es have been voluntarily dismissed without prejudice from this action, and the claims against Defendants 1, 10, 13, 32, 53, 54, 55, 58, 63, and 67 with respect to the domain names autnfoutletstore.com, tnfjacketcheaps.co.uk, thenorthfaceoutlet.es, northfaceoutletstore.com, vansnzsale.co.nz, vansstore.co.in, agritechadvisory.com, classiccanvas218.com, arayz-hair.com, hartanahmega.com, onlinetruckada.com, and thebigeggcleveland.com, only, have been voluntarily dismissed without prejudice from this action. (<u>See</u> (DE [12]).) Accordingly, Plaintiffs' Motion for Final Default Judgment refers to the remaining Defendants included in Schedule "A" attached to the Motion. (<u>See</u> Declaration of Stephen M. Gaffigan in Support of Plaintiffs' Motion for Entry of Final Default Judgment Against Defendants ["Gaffigan Decl."] ¶ 1, n.1, filed herewith.)

trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement. Defendants are in default, and the prerequisites for a default judgment have been met. As relief, Plaintiffs seek default judgment finding Defendants liable on all counts of Plaintiffs' Complaint. Plaintiffs pray such judgment includes the entry of a permanent injunction and awards of statutory damages to Plaintiffs for Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117(c) and cybersquatting pursuant to 15 U.S.C. § 1117(d). Plaintiffs also request the Court cancel, or at Plaintiffs' election, transfer the domain names to Plaintiffs, assign all rights, title and interest to the Subject Domain Names to Plaintiffs, permanently disable, delist or deindex the websites' uniform resource locators ("URLs") and Subject Domain Names from any search engines, and suspend the e-mail addresses used by Defendants,[2] in order to ensure the associated websites may no longer be used as a means for selling goods bearing and/or using counterfeits and infringements of Plaintiffs' trademarks and infringing upon Plaintiffs' respective rights.

## II.     <u>STATEMENT OF FACTS</u>

### A.     **Plaintiffs' Rights.**

Plaintiff The North Face, is the owner of all rights, title, and interest in the federally registered trademarks identified on Schedule "B" to the Complaint which are valid and registered on the Principal Register of the U.S. Patent and Trademark Office (the "TNF Marks"). (<u>See</u> Declaration of Lisa O'Hal in Support of Plaintiffs' Motion for Entry of Final Default Judgment Against Defendants ["O'Hal Decl."] ¶¶ 4-5, filed herewith; <u>see also</u> Compl. ¶¶ 23-24 and Schedule "B" thereto, (DE [1]).) TBL is the owner of all rights in and to the trademarks identified on Schedule "C" to the Complaint which are valid and registered on the Principal Register of the U.S.

---

[2] <u>See</u> Complaint, (DE [1]), at ¶ 112(d) through (i).

Patent and Trademark Office (the "TBL Marks"). (O'Hal Decl. ¶ 11; Compl. ¶ 30 and Schedule "C" thereto.) Vans is the owner of all rights in and to the trademarks identified on Schedule "D" to the Complaint which are valid and registered on the Principal Register of the U.S. Patent and Trademark Office (the "VANS Marks"). (O'Hal Decl. ¶ 17; Compl. ¶ 36 and Schedule "D" thereto.) Jansport is the owner of all rights in and to the trademarks identified on Schedule "E" to the Complaint which are valid and registered on the Principal Register of the U.S. Patent and Trademark Office (the "EASTPAK Marks"). (O'Hal Decl. ¶ 23; Compl. ¶ 42 and Schedule "E" thereto.) Kipling is the owner of all rights in and to the trademarks identified on Schedule "F" to the Complaint which are valid and registered on the Principal Register of the U.S. Patent and Trademark Office (the "KIPLING Marks"). (O'Hal Decl. ¶ 29; Compl. ¶ 48 and Schedule "F" thereto.) Altra is the owner of all rights in and to the trademarks identified on Schedule "G" to the Complaint which are valid and registered on the Principal Register of the U.S. Patent and Trademark Office (the "ALTRA Marks"). (O'Hal Decl. ¶ 35; Compl. ¶ 54 and Schedule "G" thereto.)

The TNF Marks, the TBL Marks, the VANS Marks, the EASTPAK Marks, the KIPLING Marks, and/or the ALTRA Marks (collectively, "Plaintiffs' Marks") are used in connection with the manufacture and distribution of high quality goods in the categories identified in the above referenced Paragraphs. (O'Hal Decl. ¶¶ 4-5, 11, 17, 23, 29, 35; Schedules "B" through "G" to the Complaint, identifying Plaintiffs' respective trademarks; see also Comp. Exs. 1 through 6 to the Complaint ["Plaintiffs' Trademarks Registrations"], (DE [1-2 through 1-7]), incorporated herein by reference.) Plaintiffs' Marks have been used in interstate commerce to identify and distinguish high quality goods for an extended period of time and serve as symbols of Plaintiffs' respective quality, reputation, and goodwill. (O'Hal Decl. ¶¶ 6, 12, 18, 24, 30, 36.)

Moreover, Plaintiffs have each expended substantial time, money, and other resources developing, advertising, and otherwise promoting their respective trademarks. (Id. at ¶¶ 7, 13, 19, 25, 31, 37.) Accordingly, Plaintiffs' Marks all qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1). Furthermore, Plaintiffs and their related companies have extensively used, advertised, and promoted Plaintiffs' Marks in the United States in association with high quality products, and have carefully monitored and policed the use of the trademarks. (Id. at ¶¶ 8-9, 14-15, 20-21, 26-27, 32-33, 38-39.)

### B.    Defendants' Infringing Acts.

As alleged by Plaintiffs, admitted by default, and established by the evidence submitted herewith, Defendants own, operate, or control the fully interactive commercial Internet websites and supporting domains existing under their individual, partnership, and/or business association names identified on Schedule "A" hereto (the "Subject Domain Names"). As such, Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using counterfeit and infringing trademarks which are exact copies of one or more of Plaintiffs' Marks (collectively, the "Defendants' Goods"). (See Compl. ¶¶ 13-21, 60-67, 81-85; see also O'Hal Decl. ¶ 41; Gaffigan Decl. ¶ 3; Declaration of Stephen M. Gaffigan in Support of Plaintiffs' Motion for Order Authorizing Alternate Service of Process on Defendants[3] ["Gaffigan Decl. in Support of Alt. Service"] ¶¶ 2-3, (DE [5-1]); see generally Schedules "B" through "G" to the Complaint; Plaintiffs' Trademarks Registrations, (DE [1-2 through 1-7]); see also Comp. Ex. 7 to the Complaint, relevant web page captures from Defendants' commercial Internet websites operating under the Subject Domain Names displaying

---

[3] Plaintiffs' Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Motion for Alternate Service") together with supporting declarations and exhibits (DE [5]), are incorporated herein by reference.

Plaintiffs' branded items offered for sale ["Defendants' Websites"], (DE [1-8 through 1-13]), incorporated herein by reference.)

Further, as admitted by Defendants through default, at all times relevant, Defendants have had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their exclusive rights to use and license such intellectual property and the goodwill associated therewith. (Compl. ¶¶ 61, 65.) Defendants do not have, nor have they ever had, the right or authority to use Plaintiffs' Marks for any purpose. (O'Hal Decl. ¶¶ 41-42.) However, despite their known lack of authority to do so, Defendants are engaged in the activity of promoting and otherwise advertising, distributing, selling and/or offering for sale, and distributing their Counterfeit Goods via their Internet websites operating under the Subject Domain Names. (Id. at ¶¶ 41-43; Compl. ¶¶ 13-22, 60-67; see also Defendants' Websites, (DE [1-8 through 1-13]).)

Plaintiffs' evidence, obtained as a result of their investigation of Defendants, clearly demonstrates Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods bearing and/or using counterfeits of at least one of Plaintiffs' Marks. Plaintiffs' representative, Lisa O'Hal, and a trained team of employees from the respective Plaintiffs acting under her supervision, reviewed the products bearing and/or using Plaintiffs' Marks offered for sale by Defendants by reviewing the websites operating under each of the Subject Domain Names and/or the detailed web page captures thereof, and determined the products were non-genuine, unauthorized versions of Plaintiffs' respective products, or used images of authentic products in order to facilitate the sale of non-genuine versions of Plaintiffs' respective products. (See O'Hal Decl. ¶¶ 42-43; see also Defendants' Websites, (DE [1-8 through 1-13]).)

### C.   Procedural Background.

On November 4, 2020, Plaintiffs filed their Complaint for Injunctive Relief and Damages

in this action against Defendants. Also, on November 4, 2020, Plaintiffs filed their Motion for Alternate Service, (DE [5]), which the Court granted on November 9, 2020, (DE [8]),[4] authorizing Plaintiffs to serve the Summonses, Complaint, and all other filings in this matter upon Defendants via electronic mail ("e-mail") and via website posting service. (See Gaffigan Decl. ¶ 4.)

Pursuant to the Court's Order, Plaintiffs served Defendants with their respective Summons and a copy of the Complaint via e-mail and website posting service on November 13, 2020. (Id. at ¶ 5; see also (DE [13]), Proofs of Service on file with the Court.)

The time allowed for Defendants to respond to the Complaint has expired. (Gaffigan Decl. ¶ 6.) Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. (Id. at ¶ 7.) To Plaintiffs' knowledge, Defendants are not infants or incompetent persons, and upon information and belief, the Servicemembers' Civil Relief Act does not apply. (Id. at ¶ 8.) On December 10, 2020, Plaintiffs filed their Request for Clerk's Entry of Default against Defendants, (DE [14]), and the Clerk subsequently entered default against each Defendant on December 11, 2020, for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, (DE [15]). (Id. at ¶ 9.) Plaintiffs now move the Court to grant Default Final Judgment against Defendants.

## III.   ARGUMENT

### A.   Default Judgment Should Be Entered Against Defendants.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Personal jurisdiction over Defendants and venue in this district are proper under 28 § 1391 as Defendants direct business activities toward consumers within this district and cause harm

---

[4] On November 10, 2020, the Court entered an Amended Order Authorizing Alternate Service of Process only to correct the Plaintiffs' designating service notice website, (DE [9]).

to Plaintiffs' respective businesses within this district through the fully interactive, commercial Internet websites and supporting domains operating under the Subject Domain Names. (Compl. ¶¶ 1-3, 13-19, 64.)

### 1.    Default Judgment is Proper.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. By such a default, all of Plaintiffs' well-pled allegations in the Complaint are deemed admitted. See Buchanan v. Bowman, 820 F.2d 359 (11th Cir. 1987); PetMed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). Accordingly, the well-pled factual allegations of Plaintiffs' Complaint will be taken as true. See id. In this case, the Complaint, pleadings, and declarations filed in support of Plaintiffs' Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

### 2.    Factual Allegations Establish Defendants' Liability.

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate: (1) they had prior rights to the trademarks at issue, and (2) Defendants had adopted a mark or name that was the same, or confusingly similar to Plaintiffs' respective trademarks, such that consumers were likely to confuse the two. Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997)).

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' Goods by Plaintiffs. See 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S. Ct. 2753, 2763 (1992).

Plaintiffs' Complaint also sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), a plaintiff must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed. Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006). See 15 U.S.C. § 1125(d).

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. See Planetary Motion, 261 F.3d at 1193 n.4 ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Further, the test to determine trademark infringement liability under Florida common law is the same as the likelihood of consumer confusion test outlined in § 32(a) of the Lanham Act. See PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.

The well-pled factual allegations of Plaintiffs' Complaint, including specifically those pled in Paragraphs 13-22, 60-76, 81-85, 88-93, 96-101, and 103-105 properly allege the elements for each of the above claims. Moreover, the factual allegations in Plaintiffs' Complaint, substantiated by the evidence submitted herewith, conclusively establish Defendants' liability under each claim asserted in the Complaint. Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against each Defendant.

**B.     Plaintiffs' Requested Relief Should Be Granted.**

**1.   Entry of a Permanent Injunction is Appropriate**.

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. See e.g., PetMed Express, Inc., 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief."). Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from continuing to infringe any of Plaintiffs' intellectual property rights, including Plaintiffs' Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered

irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein, Plaintiffs have clearly carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Defendants' actions merit permanent injunctive relief, not only to protect Plaintiffs' respective reputations, but also to protect consumers from being deceived as to the quality and source of products bearing and/or using Plaintiffs' respective trademarks. The facts alleged in Plaintiffs' Complaint, substantiated by the evidence submitted herewith, shows Defendants are "continuously infringing and inducing others to infringe" Plaintiffs' Marks by using them to advertise, promote, and sell goods bearing and/or using marks which are identical or altered to be identical to Plaintiffs' Marks. (Compl. ¶ 82; O'Hal Decl. ¶¶ 41-43; see generally Defendants' Websites, (DE [1-8 through 1-13]).)

Plaintiffs are clearly suffering, and will continue to suffer, irreparable injury if Defendants' infringing activities are not permanently enjoined. (O'Hal Decl. ¶ 47.) In trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). In any event, Plaintiffs' Complaint alleges Defendants' unlawful actions have caused Plaintiffs irreparable injury, and will continue to do so if Defendants are not permanently enjoined. (Compl. ¶¶ 20, 67, 78, 86, 94, 101.) Defendants have defaulted upon Plaintiffs' factual allegations in that respect.

Additionally, Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Internet websites under the Subject Domain Names, because Plaintiffs will have no control of the quality of what appears to be their products in the marketplace. (Compl. ¶¶ 77, 94, 101, 106, 111.) An award of monetary damages alone will not cure the injury to Plaintiffs' respective reputations and goodwill which will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, it can hardly be said that Defendants face hardship in refraining from their willful infringement of Plaintiffs' trademarks, whereas Plaintiffs face hardship from loss of sales and their inability to control their respective reputations. In fact, Defendants have no cognizable hardship, as they will be prohibited from selling counterfeit goods, which is an illegal act to begin with. Finally, the public has an interest in the issuance of a permanent injunction against Defendants in order to prevent consumers from being misled by Defendants' products. See Chanel, Inc. v. besumart.com, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior." (alteration added) (citation omitted)); BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc., 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount."). Ultimately, a permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Plaintiffs' property interest in their respective Marks, which are the touchstones of trademark law.

Furthermore, as admitted by Defendants through default, (i) the Subject Domain Names and corresponding website URLs are essential components of Defendants' counterfeiting and infringing activities; and (ii) the domain names and supporting URLs themselves are the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. (Compl. ¶ 22.) Therefore, in order to effectuate the injunction as a practical matter, the

Subject Domain Names identified on Schedule "A" hereto owned, operated, and/or controlled by Defendants to engage in the business of promoting, advertising, offering for sale, and selling goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks, should be ordered transferred to Plaintiffs' control by Defendants, their registrars, and/or registries. Additionally, the URLs used by Defendants to promote, advertise, offer for sale, and sell their Counterfeit Goods via the Subject Domain Names, should be permanently disabled, deindexed, or delisted from any Internet search engines. Moreover, Defendants, their agents or assigns, should be required to assign all rights, title, and interest, to their Subject Domain Names to Plaintiffs, and instruct all search engines to permanently delist or deindex the Subject Domain Names. (Compl. ¶ 112(e)-(i).)

Further, Defendants are using their e-mail addresses in connection with their unlawful activities, to promote, offer for sale, and/or sell goods bearing counterfeits and infringements of Plaintiffs' trademarks via the Subject Domain Names; accordingly, Defendants are using their e-mail addresses to facilitate their counterfeiting operations. (See Gaffigan Decl. in Support of Alternate Service ¶ 2; Gaffigan Decl. ¶ 3; see generally Defendants' Websites, (DE [1-8 through 1-13].) Therefore, the e-mail addresses Defendants use in connection with their unlawful, counterfeiting activities, which are set forth on Schedule "C" hereto, should be ordered terminated and/or permanently suspended by Defendants and the applicable e-mail service providers. (Compl. ¶ 112(d).)

Absent the transfer of the Subject Domain Names and the assignment of all rights, title, and interest to those domain names, the disablement and/or delisting of the corresponding websites and URLs from all search engines, and the suspension of the e-mail addresses by the Defendants and the applicable service providers, Defendants will remain free to continue infringing Plaintiffs' respective trademarks with impunity and will continue to benefit from the Internet traffic to those

websites built through the unlawful use of Plaintiffs' Marks.

The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. See, e.g., Swann v. Charlotte-Mecklenburg Bd. Of Educ., 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. See 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, the remedy is by no means limited to that context. See, e.g., Philip Morris USA v. Otamedia Ltd., 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace."); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (defendants ordered to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)). This Court has not hesitated to order the transfer of domain names when faced with factual scenarios similar to the one herein.[5]

---

[5] The North Face Apparel Corp. v. Thenorthfacecloting.shop, Case No. 20-cv-60491-AHS (S.D. Fla. May 22, 2020) (awarding transfer of domain names at issue as part of grant of permanent injunction); Abercrombie & Fitch Trading Co. v. Abercrombiesturkey.com, Case No. 20-cv-60417-AHS (S.D. Fla. April 27, 2020) (same); see also Chanel, Inc. v. Besumart.com, 240 F. Supp. 3d 1283 (S.D. Fla. 2016) (same); adidas AG v. 2017nmdshoes.us, No. 18-cv-61176, 2018 U.S.

Defendants have created an Internet-based counterfeiting scheme and are profiting from their deliberate misappropriation of Plaintiffs' respective rights. Accordingly, the Court should permanently prohibit Defendants from conducting their unlawful activities by transferring the Subject Domain Names, assigning all rights, title, and interest to the Subject Domain Names to Plaintiffs, disabling, deindexing or delisting the websites and corresponding URLs from search engines, and suspending the e-mail addresses, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods. See The North Face Apparel Corp. v. Thenorthfacecloting.shop, Case No. 20-cv-60491-AHS (S.D. Fla. May 22, 2020) (awarding permanent de-indexing or delisting of defendants' domain names and corresponding website URLs from search engines, assigning all rights, title, and interest to defendants' domains used to promote, offer for sale, and/or sell goods bearing counterfeits and/or infringements of plaintiff's trademarks to plaintiff, and suspension of the e-mail addresses used by defendants to facilitate their counterfeiting activities); see also The North Face Apparel Corp. v. Thenorthfaceslovensko.com, Case No. 19-cv-63116- DPG (S.D. Fla. Mar. 30, 2020) (same); Chanel, Inc. v. Aaachanelshop.ru, Case No. 19-cv-62119-UU (S.D. Fla. Oct. 8, 2019) (same).

    2.    **Damages as to Count I for Trademark Counterfeiting and Infringement**.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of goods. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it

---

Dist. LEXIS 216790 (S.D. Fla. July 31, 2018) (Bloom, B.) (same); and The North Face Apparel Corp. v. Thenorthfaceslovensko.com, Case No. 19-cv-63116-DPG (S.D. Fla. Mar. 30, 2020) (same).

may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of goods. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs elect to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. PetMed Express, Inc., 336 F. Supp. 2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990)). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. See, e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); see also PetMed Express, Inc., 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. PetMed Express, Inc., 336 F. Supp. 2d at 1220. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. See PetMed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

Plaintiffs' Marks are renowned worldwide as identifiers of high quality merchandise, and the fact that Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon each Plaintiffs' goodwill. Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that Defendants intended to cause confusion and benefit from Plaintiffs' reputation, to Plaintiffs' detriment. See PetMed Express, Inc., 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendants' use of such a mark that was confusingly similar). Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

Here, the evidence establishes Defendants intentionally copied at least one of Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' world-famous reputation. In any event, Defendants defaulted on Plaintiffs' allegations of willfulness. (See Compl. ¶ 67.) See Arista Records, Inc., 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default). This Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant individually promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were in fact counterfeits of, at least, one of Plaintiffs' Marks. (Compl. ¶¶ 23-24, 30, 36, 42, 48, 54, 60-76, 81-85; O'Hal Decl. ¶¶ 41-43; Schedules "B" through "G" to the Complaint; see generally Defendants' Websites, (DE [1-8 through 1-13]).) Based on the above considerations, Plaintiffs

respectfully suggest the Court award statutory damages of $1,000,000.00 against each Defendant.

This suggested award falls well within the permissible statutory range under 15 U.S.C. § 1117(c)(2), and is appropriate based on Defendants' extensive and willful counterfeiting and should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; PetMed Express, Inc., 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). This Court and others have granted statutory damages under the Lanham Act similar to Plaintiffs' request herein.[6]

### 3.    Damages as to Count II for False Designation of Origin.

Plaintiffs' Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

---

[6] See, e.g., The North Face Apparel Corp. v. Thenorthfacecloting.shop, Case No. 20-cv-60491-AHS (S.D. Fla. May 22, 2020) ) (awarding Plaintiff $1,000,000.00 against each Defendant); Abercrombie & Fitch Trading Co. v. Abercrombiesturkey.com, Case No. 20-cv-60417-AHS (S.D. Fla. April 27, 2020) (same); see also Richemont Int'l SA v. Swisscartier.cn, No. 18-60662-Civ, 2018 U.S. Dist. LEXIS 221656 (S.D. Fla. Nov. 15, 2018) (Scola, R.) (same); adidas AG v. 2017nmdshoes.us, No. 18-cv-61176, 2018 U.S. Dist. LEXIS 216790 (S.D. Fla. July 31, 2018) (Bloom, B.) (same); Cartier Int'l A.G. v. Replicapaneraiwatches.cn, No. 17-cv-62401, 2018 U.S. Dist. LEXIS 188943 (S.D. Fla. Apr. 2, 2018) (Moore, K.) (same); and The North Face Apparel Corp. v. Thenorthfaceslovensko.com, Case No. 19-cv-63116-DPG (S.D. Fla. Mar. 30, 2020) (same).

### 4.     Damages as to Count III for Cybersquatting.

Plaintiffs' Complaint further sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). As admitted by default, and established by the evidence submitted herewith, certain Defendants (the "Cybersquatting Defendants") have acted with the bad faith intent to profit from Plaintiffs' Marks and the goodwill associated with those trademarks by registering their corresponding Subject Domain Names, identified on Schedule "B" hereto (the "Cybersquatted Subject Domain Names"), which are identical, confusingly similar to, or dilutive of at least one of Plaintiffs' Marks. (Compl. ¶¶ 69-74, 96-101.) The Cybersquatted Subject Domain Names incorporate one or more of Plaintiffs' trademarks in their entirety surrounded by descriptive or generic terms, rendering the domain name nearly identical to Plaintiffs' trademarks. Even minor variations to a plaintiff's mark in a domain name can be confusingly similar. See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law."); DaimlerChrysler v. The Net Inc., 388 F.3d 201, 205-06 (6th Cir. 2004) ("Courts generally have held that a domain name that incorporates a trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain name] is used, approved, or permitted' by the mark holder."). Furthermore, it is indisputable that Plaintiffs' Marks are famous, distinctive, enjoy widespread recognition, and are prominent in the minds of the consuming public. (See O'Hal Decl. ¶¶ 4-7, 11-13, 17-19, 23-25, 29-31, 35-37.)

As to the issue of bad faith, the ACPA lists nine factors for courts to consider in determining whether a domain name has been registered or used in "bad faith" with an intent to profit from a mark in registering or using the mark in a domain name. See 15 U.S.C. § 1125(d)(1)(B)(i); Taverna

Opa Trademark Corp., 2010 WL 1838384, at *2. The nine factors are not meant to be exclusive and the Court may consider the context of the matter in making a determination of bad faith. See Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1347. An examination of the relevant bad faith factors compels the conclusion that the Cybersquatting Defendants' registration and use of the Cybersquatted Subject Domain Names violates 15 U.S.C. § 1125(d).

The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as the Cybersquatting Defendants have no rights in Plaintiffs' Marks, and the Cybersquatting Defendants have never used Plaintiffs' Marks in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V) and (IX), weigh in Plaintiffs' favor. As discussed above, the Cybersquatting Defendants have clearly intentionally incorporated at least one of Plaintiffs' Marks in their domain names to divert consumers looking for Plaintiffs' Internet websites to their own Internet websites for commercial gain. Such consumers are likely to be confused as to the source and sponsorship of the Cybersquatting Defendants' Internet websites and mistakenly believe the websites are endorsed by and/or affiliated with Plaintiffs. Clearly, the Cybersquatting Defendants' registration of the Cybersquatted Subject Domain Names, in order to promote and/or offer for sale counterfeit and infringing versions of Plaintiffs' branded goods, knowing the domain names are identical or confusingly similar to Plaintiffs' indisputably famous and distinctive marks ensures a likelihood of confusion among consumers. See House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act.").

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."

15 U.S.C. § 1125(d)(1)(c); <u>Victoria's Cyber Secret Ltd. P'ship</u>, 161 F. Supp. 2d at 1356. Accordingly, Plaintiffs are entitled to the transfer and ownership of the Cybersquatted Subject Domain Names because they are confusingly similar to their trademarks. See id. at 663. Additionally, Plaintiffs may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just. 15 U.S.C. § 1117(d). Plaintiffs elect statutory damages and submit that in view of the Cybersquatting Defendants' intentional, wrongful behavior, an award in the amount of $10,000.00 against each of the Cybersquatting Defendants for each of their respective Cybersquatted Subject Domain Names, as identified on Schedule "B" hereto, would be just. <u>See Taverna Opa Trademark Corp.</u>, 2010 WL 1838384, at *3 (awarding $10,000.00 in statutory damages for the infringing domain name at issue); <u>see also The North Face Apparel Corp. v. Thenorthfacecloting.shop</u>, Case No. 20-cv-60491-AHS (S.D. Fla. May 22, 2020).

### 5.   Damages as to Counts IV and V for Common Law Unfair Competition and Common Law Trademark Infringement.

Plaintiffs' Complaint also sets forth a cause of action under Florida's common law of unfair competition (Count IV) and Florida's common law trademark infringement (Count V). Plaintiffs submit that judgment on Counts IV and V should also be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs, The North Face Apparel Corp., TBL Licensing LLC, Vans, Inc., Jansport Apparel Corp., Kipling Apparel Corp., and Altra LLC, respectfully request the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

DATED: December 11, 2020.          Respectfully submitted,

                                   STEPHEN M. GAFFIGAN, P.A.
                                   By: **Stephen M. Gaffigan**
                                   Stephen M. Gaffigan (Fla. Bar No. 025844)
                                   Virgilio Gigante (Fla. Bar No. 082635)
                                   T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
                                   401 East Las Olas Blvd., #130-453
                                   Ft. Lauderdale, Florida 33301
                                   Telephone: (954) 767-4819
                                   E-mail: stephen@smgpa.net
                                   E-mail: leo@smgpa.net
                                   E-mail: raquel@smgpa.net

                                   Attorneys for PLAINTIFFS

### SCHEDULE "A"
### DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 1 | storetnfjacket.de |
| 1 | tnfjacketsclearan.com |
| 2 | billignorthfacejakker.com |
| 2 | halpanorthface.com |
| 2 | levnenorthfaceonline.com |
| 3 | eleshcapoherbs.com |
| 4 | esinkaracan.com |
| 4 | nwflfirewood.com |
| 4 | twinklepopsicle.com |
| 6 | houseboundbunnylife.com |
| 6 | tastyrecipes123.com |
| 7 | indirimlinorthface.com |
| 7 | northfacech.com |
| 7 | northfacehelsinki.com |
| 7 | northfacehu.com |
| 7 | northfacenorge.com |
| 7 | northfaceonlinesale.com |
| 7 | northfaceoutletdanmark.com |
| 7 | northfacepl.com |
| 7 | northfaceportugal.net |
| 7 | northfacerea.com |
| 7 | northfacesg.com |
| 7 | northfacesingapore.com |
| 7 | northfacesverige.com |
| 7 | northfaceudsalg.com |
| 7 | northfacevypredaj.com |
| 7 | sklepnorthface.com |
| 7 | thenorthfacesaleaustralia.com |
| 7 | thenorthfaceturkiye.com |
| 7 | tnffiyat.com |
| 7 | tnfoutletcanada.com |
| 7 | tnfsalecanada.com |
| 7 | tnfsaleuk.co.uk |
| 7 | tnfsaleuk.com |
| 8 | limosroundrock.com |
| 9 | littlemonkeywrites.com |
| 10 | magasinnorthface.fr |
| 10 | northfaceberlin.de |
| 10 | northfaceeshop.cz |
| 10 | northfaceindia.co.in |

| 10 | northfaceindia.in |
|----|---|
| 10 | northfaceita.it |
| 10 | thenorthfaceaustralia.com |
| 10 | thenorthfaceromania.ro |
| 10 | thenorthfacesuomi.fi |
| 10 | tnfmexico.com.mx |
| 10 | tnfoutlet.es |
| 10 | tnfoutletsingapore.com |
| 11 | mariyus.ca |
| 12 | north-face.ca |
| 13 | northface-jacket.ca |
| 14 | northfacemensale.com |
| 15 | northfaceuitverkoop.com |
| 16 | norththeface.cc |
| 17 | polomonline.xyz |
| 18 | robitaille-energie.com |
| 19 | seanema.me |
| 20 | thenorthfacesale.site |
| 21 | tourntravelmart.com |
| 23 | darganlong.com |
| 24 | dlglandmanagement.com |
| 25 | donniecalabro.com |
| 26 | mimatangoma.com |
| 27 | timberland1973.xyz |
| 28 | timberlandbootonsale.co.uk |
| 30 | biotesisat.com |
| 30 | cbta.fr |
| 30 | sneakers2019.de |
| 30 | storepuma365.xyz |
| 30 | zapatillasvans.xyz |
| 31 | newvansoldskool.com |
| 31 | vansslip-on.com |
| 32 | newvansshoes.co.in |
| 32 | vansfrsolde.fr |
| 32 | vansit.it |
| 32 | vansmagazin.com |
| 32 | vansprahacz.cz |
| 32 | vanssale-au.com |
| 32 | vansshopbudapest.com |
| 32 | vansstoreschweiz.com |
| 33 | ospbronowice.pl |
| 34 | sirajjewellery.com |
| 35 | studyincn.ca |
| 36 | troiashoes.com.br |
| 37 | vansavepro.com |

| 38 | vansayakkabis.com |
|----|----|
| 39 | vansbrand.ru |
| 41 | vanscarpe.it |
| 42 | vansclearancesale.com |
| 43 | vansoldskool.us |
| 44 | vansoldskoolschuhe.de |
| 45 | vansoutlet.net |
| 46 | vansoutletonline.es |
| 47 | vans-sale.ru |
| 48 | vansskosalg.cz |
| 49 | vanssoldes.fr |
| 50 | vansstyle73.com |
| 51 | westwindcdl.com |
| 53 | pueblopreservation.com |
| 54 | ailleurscestici.fr |
| 54 | ain-bureau-class.com |
| 54 | apoteketsverige.eu |
| 54 | berkleydays.com |
| 54 | bertasalinas.es |
| 54 | bookincarrental.com |
| 54 | britzer-philatelistenclub.de |
| 54 | cakesbyfiona.co.uk |
| 54 | csg-scouts.org.uk |
| 54 | donaldedmonds.com |
| 54 | fhslacrosse.com |
| 54 | flcattle.com |
| 54 | furnaceaircond.com |
| 54 | ganddfree.co.uk |
| 54 | homelingua.es |
| 54 | hybrisnegocioytalento.es |
| 54 | josephthomasflowershop.com |
| 54 | klangmassage-hanau.de |
| 54 | lafabricadejuan.com |
| 54 | petrikat-usedom.de |
| 54 | runrig-berlin.de |
| 54 | sequelstownelake.com |
| 54 | tutankhamencode.com |
| 54 | ukmbiznet.com |
| 54 | vrfklimalar.com |
| 54 | woodcraftsplusllc.com |
| 55 | visionsofthecosmos.co.uk |
| 56 | attictreasureswhg.com |
| 57 | eprinterdriver.net |
| 57 | knowhowconsulting.co.uk |
| 57 | landmarkqualityhomeskansas.com |

| | |
|---|---|
| 57 | lavalleedugout.com |
| 57 | scottishbagpiper.co.uk |
| 57 | shaftesburyheritage.org.uk |
| 57 | total-lookup.com |
| 57 | urswickchurch.co.uk |
| 58 | espace-optimum.com |
| 58 | thekuriouskerri.com |
| 59 | grahamnordicocean.com |
| 60 | green-screen-people.com |
| 60 | michellesosnowski.com |
| 61 | higherlovestudios.com |
| 62 | myworldinsquares.com |
| 63 | sarahringer.com |
| 64 | thomasandmonica.com |
| 65 | wp-bp.com |
| 66 | acessoriosdgriffe.com.br |
| 67 | arredamentistazi.it |
| 67 | kiplingsale.com |
| 67 | messages-on-hold.com |
| 67 | obiwansail.it |
| 67 | tulipclassifieds.com |
| 68 | altra-ca.com |
| 68 | altraaustralia.com |
| 68 | altrashoescanada.com |
| 68 | altrashoesnz.com |

### SCHEDULE "B"
### CYBERSQUATTING DEFENDANTS BY NUMBER AND
### CYBERSQUATTED SUBJECT DOMAIN NAME

| Defendant Number | Cybersquatting Defendant | Infringing Subject Domain Name(s) | Requested Statutory Damage Award |
|---|---|---|---|
| 7 | indirimlinorthface.com | thenorthfacesaleaustralia.com<br>thenorthfaceturkiye.com | $20,000.00 |
| 10 | magasinnorthface.fr | thenorthfaceaustralia.com<br>thenorthfaceromania.ro<br>thenorthfacesuomi.fi | $30,000.00 |
| 20 | thenorthfacesale.site | thenorthfacesale.site | $10,000.00 |
| 27 | timberland1973.xyz | timberland1973.xyz | $10,000.00 |
| 28 | timberlandbootonsale.co.uk | timberlandbootonsale.co.uk | $10,000.00 |
| 30 | biotesisat.com | zapatillasvans.xyz | $10,000.00 |
| 31 | newvansoldskool.com | newvansoldskool.com<br>vansslip-on.com | $20,000.00 |
| 32 | newvansshoes.co.in | newvansshoes.co.in<br>vansfrsolde.fr<br>vansit.it<br>vansmagazin.com<br>vansprahacz.cz<br>vanssale-au.com<br>vansshopbudapest.com<br>vansstoreschweiz.com | $80,000.00 |
| 37 | vansavepro.com | vansavepro.com | $10,000.00 |
| 38 | vansayakkabis.com | vansayakkabis.com | $10,000.00 |
| 39 | vansbrand.ru | vansbrand.ru | $10,000.00 |
| 41 | vanscarpe.it | vanscarpe.it | $10,000.00 |
| 42 | vansclearancesale.com | vansclearancesale.com | $10,000.00 |
| 43 | vansoldskool.us | vansoldskool.us | $10,000.00 |
| 44 | vansoldskoolschuhe.de | vansoldskoolschuhe.de | $10,000.00 |
| 45 | vansoutlet.net | vansoutlet.net | $10,000.00 |
| 46 | vansoutletonline.es | vansoutletonline.es | $10,000.00 |
| 47 | vans-sale.ru | vans-sale.ru | $10,000.00 |
| 48 | vansskosalg.cz | vansskosalg.cz | $10,000.00 |
| 49 | vanssoldes.fr | vanssoldes.fr | $10,000.00 |
| 50 | vansstyle73.com | vansstyle73.com | $10,000.00 |

| 67 | arredamentistazi.it | kiplingsale.com | $10,000.00 |
|---|---|---|---|
| 68 | altra-ca.com | altra-ca.com<br>altraaustralia.com<br>altrashoescanada.com<br>altrashoesnz.com | $40,000.00 |

## SCHEDULE "C"
## E-MAIL ADDRESSES USED IN CONNECTION WITH THE SALE OF
## COUNTERFEIT GOODS BEARING THE PLAINTIFFS' MARKS

| |
|---|
| Onlineservice.Lucy@Gmail.Com |
| leleasliwg@hotmail.com |
| vipservicevipshop@gmail.com |
| brandswholesalestore@hotmail.com |
| sarah.ghesquiere@hotmail.com |
| druvasinanan17@gmail.com |
| gezim.mavric@gmail.com |
| service.333sunny@gmail.com |
| xbuycustomerservice@gmail.com |
| ebuyonlineservicer@gmail.com |
| papaget@hotmail.com |
| sleaseytdop@hotmail.com |
| troiashoes@gmail.com |
| Jamie.onlineservice@gmail.com |
| shoe.customerservice@gmail.com |
| globalclienthelp@gmail.com |
| santiago.otero67@hotmail.com |
| servicejenny@outlook.com |
| shoe.customersservice@gmail.com |
| Onlineservice.Karen@Gmail.Com |
| serviceonline.karen@hotmail.com |
| vcaldwell780@gmail.com |
| jackrogers9885@gmail.com |
| robertryan4306@gmail.com |
| Serviceonline.Annie@Gmail.Com |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 11, 2020, a true copy of the foregoing was served

upon Defendants via e-mail to the e-mail addresses at which Defendants were served, and by

posting copies of the same on the Court authorized serving notice website located at the URL

http://servingnotice.com/vcfm3blu/index.html.

**<u>Stephen M. Gaffigan</u>**
Stephen M. Gaffigan
